UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MYRICK EGGLESTON,

        Petitioner,

v.                                    Case No. 3:14-cv-913-J-39MCR

SECRETARY, DOC, et al.,

        Respondents.

_____

**ORDER**

**I.   INTRODUCTION**

Petitioner Myrick Eggleston raises one ground in his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  Respondents provide a succinct summary of Petitioner's claim:

> Eggleston has filed a Petition for Writ of Habeas Corpus challenging the order of a Florida Circuit Court in dismissing his mandamus petition as well as a Florida District Court of Appeal's summary affirmance of the Circuit Court order dismissing his petition. (Doc. 2 at 4) Eggleston claims that the Circuit Court erred in the granting of the Department's motion to dismiss which is the result of a violation of his due process of law. (Doc. 2 at 4) Eggleston asserts that the Department's decision to discipline him for an infraction that could not have occurred is the result of a fundamental error. (Doc. 2 at 4) As relief, Eggleston requests this Court overturn the disciplinary report and find that Eggleston's due process rights were violated. (Doc. 2 at 6)

Response at 1-2.  See Petition at 5.  Thus, Petitioner challenges the Florida Department of Corrections' (Department) disciplinary

report for escape or attempted escape, resulting in the loss of 180 days of gain time.  Respondents filed a Response to Petition for Writ of Habeas Corpus (Response) (Doc. 11).  In support of their Response, they submitted Exhibits (Doc. 11).[1]

As relief, Petitioner asks that the Court direct that the disciplinary report be overturned and his 180 days of gain time be restored.  He states that this loss of gain time effects the length of his incarceration.  Petitioner also submitted a Memorandum of Law (Memorandum) (Doc. 2) with Exhibits.  Petitioner filed a Reply to the Respondents' Response (Reply) (Doc. 13).[2]  See Order (Doc. 6).[3]

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), petition for cert. filed, – U.S. – (U.S. Oct. 14, 2016) (No. 16-6444). "'The purpose of AEDPA is to ensure that federal habeas relief

---

[1] The Court hereinafter refers to the Respondents' exhibits as " R. Ex."  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

[2] The Court hereinafter refers to the exhibits attached to Petitioner's Reply as "Exhibit."  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

[3] No evidentiary proceedings are required in this Court.

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[4] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> ..."It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [Harrington v. Richter, 562 U.S. 86, 101 (2011)] (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of

---

[4] "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

federal law is different from an incorrect
application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir. 2013),

cert. denied, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the
last state court decision that evaluated the claim on its merits.
See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235
(11th Cir. 2016) (en banc), petition for cert. filed, – U.S. –
(U.S. Nov. 10, 2016) (No. 16-6855); Marshall v. Sec'y, Fla. Dep't
of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).   Regardless of
whether the last state court provided a reasoned opinion, "it may
be presumed that the state court adjudicated the claim on the
merits in the absence of any indication or state-law procedural
principles to the contrary."   Richter, 562 U.S. at 99; see also
Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013).

Where the last adjudication on the merits is "'unaccompanied
by an explanation,' a petitioner's burden under section 2254(d) is
to 'show [ ] there was no reasonable basis for the state court to
deny relief.'"   Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S.
at 98).   "[A] habeas court must determine what arguments or theories
supported or, as here, could have supported, the state court's
decision; and then it must ask whether it is possible fairminded
jurists could disagree that those arguments or theories are
inconsistent with the holding in a prior decision of [the] Court."
Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235;

- 4 -

<u>Marshall</u>, 828 F.3d at 1285.  To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal habeas court is not limited to assessing the reasoning of the lower court.  <u>Wilson</u>, 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," <u>Renico</u> [<u>v. Lett</u>, 449 U.S. 766, 733 (2010)] (quoting [<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)] ), and presume that it "follow[ed] the law," [<u>Woods v. Donald</u>, --- U.S. ----, 135 U.S. 1372, 1376 (2015)] (quoting <u>Visciotti</u>, 537 U.S. at 24).

<u>Wilson</u> at 1238; <u>see also</u> <u>Williams</u>, 133 S.Ct. at 1101 (Scalia, J., concurring).

### III.  PROCEDURAL HISTORY

A brief procedural history will be provided.  On August 16, 2012, an officer of the Department charged Petitioner with escape or attempted escape.  R. Ex. B (Doc. 11-1 at 11).  The Statement of Facts charge:

> On August 26, 2012 at approximately 11:56AM, while assigned as Public Works Supervisor, I was present at the City Yard with 7 inmates. At approximately 12:02PM after being advised of a possible escape attempt, I conducted an informal count and discovered inmate Eggleston, Myrick DC#R19903 was missing.  It was later discovered that inmate Eggleston had

- 5 -

> ran [sic] from the City Yard and collapsed
> approximately 3 blocks down the road.  Inmate
> Eggleston received medical attention due to
> his condition and was later returned to the
> institution and placed in administrative
> confinement pending the charge of 4-1 escape
> or escape attempt of the Rules of Prohibited
> Conduct.   The shift OIC was notified and
> instructed me to submit this report.

Id.

Petitioner, on August 17, 2012, provided a statement that during his lunch break at the Public Works, he smoked K-2 and lost reality.  R. Ex. D (Doc. 11-1 at 14).  He said that when he realized what he had done (run), he was receiving medical attention.  Id.  He submitted an additional statement contending that he was not in a confined or enclosed area, so the offense should not be considered to be an escape or attempted escape.  Id. at 15.  He had no witnesses or evidence to present.  R. Ex. E (Doc. 11-1 at 16); R. Ex. F (Doc. 11-1 at 17).

Petitioner pled not guilty and declined the offer of staff assistance.  R. Ex. G (Doc. 11-1 at 19).  The team provided the basis of its decision:

> The team decision is based on information
> obtained from the investigation, the hearing
> and Officer J. Wallace's statement in section
> one of the DR, where it is reported that
> Officer Wallace conducted a[n] informal count
> while working inmate in Public Works and
> discovered that inmate Eggleston was missing
> and had ran [sic] 3 blocks away.  Inmate
> Eggleston was allowed to make a statement and
> he stated he don't [sic] remember what
> happened, he just woke up in an ambulance.
> Inmate Eggleston's witness statements were
> read during the hearing, Inmate Eggleston

> stated that he smoked K-2 and lost reality.
> Inmate Eggleston refused to call any witnesses
> and signed the DC6-112B denoting such.  No
> other evidence was presented.  AC time was
> considered but not applied.

<u>Id</u>.

As punishment, Petitioner lost 180 days of gain time and received 60 days of disciplinary confinement.  <u>Id</u>.  Petitioner submitted a Request for Administrative Remedy or Appeal to the Warden.  R. Ex. H (Doc. 11-1 at 20).  The Response, in pertinent part, said:

> An inmate is lawfully incarcerated while
> working outside the institution.  Being in an
> unauthorized area or unauthorized absence from
> you[r] squad or assignment constitutes as
> [sic] an escape.  You were aware of this
> information[.] [It] is on the "Rules for
> inmates assigned to community work squads"
> which you have been given several times and
> the copies are in your inmate file.  In your
> own statement during the investigation you
> wrote "during my lunch break of public works I
> smoked K-2 and lost reality.  When I realized
> what I had done (running) was real I was
> receiving medical attention."

R. Ex. I (Doc. 11-1 at 21).

Petitioner appealed to the Secretary through a Request for Administrative Remedy or Appeal.  R. Ex. J (Doc. 11-1 at 22-26). The appeal was rejected as not being in compliance with the rules. R. Ex. K (Doc. 11-1 at 27).  Petitioner submitted another Request for Administrative Remedy or Appeal to the Secretary.  R. Ex. L (Doc. 11-1 at 28-30).  The Secretary denied the appeal for the

reasons stated in the institutional response.  R. Ex. M (Doc. 11-1 at 31).

On December 10, 2012 Petitioner provided a Petition for Writ of Mandamus to the prison officials for mailing to the circuit court.  R. Ex. N (Doc. 11-1 at 32); Exhibit 1 (Doc. 13-1 at 1-5). The circuit court, on January 23, 2013, entered an Order to Show Cause.  Exhibit 2 (Doc. 13-2 at 1-2).  On June 14, 2013, the circuit court entered an Order Dismissing Petition.  R. Ex. 2 (Doc. 11-2 at 1-2).  The court found the petition was filed more than 30 days from the exhaustion of administrative remedies, it was untimely, and should be dismissed for lack of jurisdiction.  Id. On March 19, 2014, the First District Court of Appeal affirmed per curiam.  R. Ex. 3 (Doc. 11-3 at 2).  The mandate issued June 2, 2014.  Id. (Doc. 11-3 at 1).

Petitioner is no longer confined in the Department.  He was released on March 1, 2015.[5]  He now resides in Philadelphia, Pennsylvania.  (Doc. 16).

## IV.  CONCLUSION

When Petitioner filed this case with the Clerk on August 1, 2014, he was in the custody of the Department.  Therefore, he satisfied the "in custody' requirements of 28 U.S.C. § 2254(a). Maleng v. Cook, 490 U.S. 488, 490-91 (1989).  Petitioner filed his

---

[5] See http://www.dc.state.fl.us/ImateReleases/detail.

- 8 -

Reply with the Clerk on December 29, 2014, and was released from the Department 62 days later, on March 1, 2015.

Neither party submitted a challenge to this Court's jurisdiction based on mootness, however, "a federal court at any stage of the proceedings must, on its own, dismiss a case as moot when it cannot give the petitioner any effective relief." A.M. v. Butler, 360 F.3d 787, 790 (7th Cir. 2004) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998), Calderon v. Moore, 518 U.S. 149, 150 (1996)). "[A] habeas petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still presents a case or controversy under Article III, § 2, of the United States Constitution, and therefore is not moot." Mattern v. Sec'y for the Dep't of Corr., 494 F.3d 1282, 1285 (11th Cir. 2007) (per curiam) (citing Spencer, 523 U.S. at 7). Petitioner has not alleged any collateral consequences, and the case or controversy requirement of Article III of the United States Constitution continues through all stages of federal judicial proceedings. Williams v. Carter, 253 F. App'x 914, 915 (11th Cir. 2007) (per curiam) (refusing to extend presumption of collateral consequences to revocation of good-time credits).

Of great import, the Court cannot grant Petitioner relief. He is no longer confined in the Department. Also of note, Petitioner is not challenging the constitutionality of his original conviction and sentence. Moreover, Petitioner was not criminally convicted of escape. Thus, there is no escape conviction to be used to enhance

any future sentence.  Any argument that an internal, administrative disciplinary report concerning escape or attempted escape will enhance a subsequent sentence is too speculative to create a case or controversy.  Courts are not "in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer, 523 U.S. at 18.  This Court cannot give Petitioner any effective relief, and no further relief can be obtained from the Respondents on the Petition.  As such, Petitioner does not have Article III standing and this case is due to be dismissed as moot.

Alternatively, the Petition should be dismissed for lack of jurisdiction.  Fundamentally, Petitioner is asking this Court to reverse the state court's decision that his mandamus petition was untimely filed and it lacked jurisdiction to rule on the petition.  Respondents assert that Petitioner is seeking relief outside of this Court's jurisdiction pursuant to the Rooker-Feldman doctrine.  Response at 5.  As such, they ask the Court to dismiss the Petition for lack of jurisdiction.  Id. at 6-7.

Upon review, Petitioner is claiming that the circuit court improperly dismissed his mandamus petition as untimely filed, and that the First District Court of Appeal unjustly affirmed this decision.  In brief, Petitioner is asking this Court to overturn injurious state court rulings.  This Court has no power to review the decisions made by the Florida state courts. Kolb v. Santurri, No. 3:09cv2-WS, 2009 WL 2602625, at *1 (N.D. Fla. Aug. 21, 2009)

- 10 -

(not reported in F.Supp.2d) (recognizing that a federal district court is without jurisdiction to "sit in review of state-court judges' decisions").  See Response at 6-7.

Indeed, Petitioner's request for reversal of state court decisions is plainly prohibited by the Rooker-Feldman doctrine:

> The Rooker-Feldman doctrine derives from Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments. Nicholson v. Shafe, 558 F.3d 1266, 1270 (11th Cir. 2009). This is because "[28 U.S.C.] § 1257, as long interpreted, vests authority to review a state court judgment solely in th[e Supreme] Court." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The Supreme Court recently has cautioned that "[t]he Rooker- Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284, 125 S.Ct. 1517; see also Lance v. Dennis, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (per curiam) (noting the "narrowness" of the Rooker- Feldman rule). We have since explained that the Rooker- Feldman doctrine operates as a bar to federal court jurisdiction where the issue before the federal court was "inextricably intertwined" with the state court judgment so that (1) the success of the federal claim would "effectively nullify" the state court judgment, or that (2) the federal claim would succeed "only to the extent that the state court wrongly decided the issues." Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)

(per curiam) (internal quotation marks omitted).

Alvarez v. Attorney General for Fla., 679 F.3d 1257, 1262-63 (11th Cir. 2012) (footnote omitted).

Finally, and alternatively, Petitioner's assertion that his disciplinary infraction did not amount to escape or attempted escape, but merely constituted an unauthorized absence pursuant to the Florida Administrative Code (Fla. Admin. Code 33-601.314 (4-2) (unauthorized absence from assigned area, including housing, job or any other assigned or designated area)), is not cognizable in a federal habeas corpus proceeding. See Memorandum at 10-11. This claim involves statutory interpretation of a state law found in the Florida Administrative Code (Fla. Admin. Code 33-601.314 (4-1) (escape or escape attempt)). The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)), cert. denied, 531 U.S. 1170 (2001).

The Eleventh Circuit allows that only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). Petitioner attempts to bring his claim within the purview of this Court's jurisdiction by labeling his claim a due process claim. However, "[t]his limitation on federal habeas review is of equal

- 12 -

force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).  It is not within the province of a this Court to make the type of examination Petitioner requests.

Since ground one presents an issue that is not cognizable in this habeas proceeding, this ground cannot provide a basis for federal habeas corpus relief.  Reviewing this ground, there is no breach of a federal constitution mandate.  Therefore, the claim raised in ground one is due to be dismissed.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk** shall enter judgment dismissing the case with prejudice.

3.   The **Clerk** shall close this case.

4.   If Petitioner appeals the dismissal of his Petition, **the Court denies a certificate of appealability.**[6]  Because this Court

---

[6] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S.

- 13 -

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

    **DONE AND ORDERED** at Jacksonville, Florida, this 30th day of January, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 1/27
c:
Myrick Eggleston
Counsel of Record

---

322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.